(No. 47763.—

RONALD W. SARVER, Appellee, v. BARRETT ACE HARDWARE, INC., *et al.*, Appellants. (Noel C. Lindenmuth, Contemnor-Appellee.)

*Opinion filed May 14, 1976.—Rehearing denied June 28, 1976.*

Gates W. Clancy, of Geneva (William B. Phillips, of counsel), for appellants.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Anthony V. Fanone, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Ronald Sarver, sued in the circuit court of Will County for personal injuries allegedly caused by the unreasonably dangerous condition of defendants' product. When plaintiff failed to comply with certain discovery orders, his attorney was found guilty of contempt. The appellate court reversed the contempt order. (29 Ill. App. 3d 195.) We granted defendants' petition for leave to appeal under Rule 315 (58 Ill.2d R. 315). We reverse the appellate court.

Sarver alleged that, while using a hammer manufactured by defendant Estwing Manufacturing Company and sold by defendant Barrett Ace Hardware, a piece of metal chipped off the hammer and struck him in the eye causing serious injury. The metal chip was not available, but the hammer, apparently one of two normally used by Sarver, was in his possession and was produced for inspection pursuant to a motion by defendants and an order of the court. A visual examination of the striking face of the hammer by defendants' expert revealed some indentations but no obvious chipping. The expert reported to the defendants' attorney that in order to determine the metallurgical properties of the hammer, it would be necessary to remove a piece of the metal from it for testing purposes. The defendants then moved for production of

the hammer for "destructive testing." The court allowed the motion but required the parties to submit plans for the testing which would also specifically set forth the proposed "resulting appearance and the resulting destruction, in part or in whole, of the hammer." Defendants' expert proposed:

(1) Photographing the hammer to document its condition as received.

(2) Examining the hammer macroscopically for areas of possible chipping and taking macro-photos to document the observations.

(3) Drilling three 1/4-inch holes approximately 3/4 inch deep in the side of the hammer claw, just above the eye of the hammer, for chemical analysis to determine steel composition.

(4) Cutting a wedge-shaped section from the striking face of the hammer for microscopic examination to evaluate the microstructure. Hardness tests would also be performed on the same wedge-shaped section.

Sketches were included with the proposal submitted.

In ordering the testing of the hammer the trial court provided for safeguards: (1) Defendants' expert was required to give written notice of the test date to plaintiff's attorney 10 days in advance; (2) a representative of plaintiff would be allowed to observe and photograph the testing procedure; (3) one-half of all samples was to be preserved and turned over to plaintiff; and (4) the hammer and samples were to be returned to plaintiff.

The attorney for plaintiff refused to comply with the order of the court. He was found to be guilty of direct contempt and was fined $100. The appeal was taken from this order.

The issue of so-called "destructive testing" is one of first impression in this State and it has rarely arisen in other jurisdictions. In *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill.2d 339, a products liability case

also involving a metal chip from a hammer causing an eye injury, metallurgical tests were performed which were presumably partially "destructive." However, there, neither party challenged the propriety of those tests. In *Petruk v. South Ferry Realty Co.* (1956), 2 App. Div. 2d 533, 157 N.Y.S.2d 249, metallurgical testing of a bolt was permitted even though part of the bolt would be materially altered or destroyed. There however, the context in which the issue arose differed from that of the present case.

Defendants contend that the language of Supreme Court Rules 201 and 214 (58 Ill.2d Rules 201, 214) is broad enough to include the physical testing of tangible objects, even when that testing involves alteration or partial destruction of the object. We find that this type of testing is permissible as long as the rights of the opposing litigant are not unduly prejudiced. Consequently, we reverse the appellate court.

The appellate court acknowledged the desirability of full disclosure of relevant facts through discovery proceedings and recognized that wide discretion is conferred upon the trial judge by our discovery rules. However, the court noted that the rules did not specifically provide for testing and concluded that the construction of our rules to include the type of testing proposed in this case involved a policy question which should be determined by this court and not by the appellate court.

Supreme Court Rule 201(b)(1) provides in part that "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, *** including the existence, description, nature, custody, condition, and location of any *** tangible things ***." Rule 214 provides: "Any party may by written request direct any other party to produce for inspection, copying, reproduction and photographing specified documents, objects or tangible things ***."

In *Monier v. Chamberlain* (1966), 35 Ill.2d 351, this

court broadly interpreted the discovery rules and procedures. In construing Rule 17, the predecessor to our present discovery rules, the court stated:

"That discovery procedures were designed to be flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial courts is clear from the language of the rule \*\*\*. Provisions permitting greater flexibility or conferring wider discretion would be difficult to formulate \*\*\*." (35 Ill.2d 351, 355.)

Further, this court observed that "the objective to be obtained under the discovery rules is the expeditious and final determination of controversies in accordance with the substantive rights of the parties." (35 Ill.2d 351, 357.) Later, in *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill.2d 180, 193, this court indicated that it encouraged "the bench and bar to wisely use the tools of discovery to illuminate the actual issues in the case \*\*\*."

The testing procedures contemplated here will clearly promote the "expeditious and final determination of controversies" and "illuminate the actual issues in the case." As the trial court said, "the cause must stand or fall on expert testimony, along with factual testimony, and such expert testimony can only come about if both sides have adequate opportunity to make such tests, even if 'destructive'."

Thus, we hold that "testing," whether "destructive" or not, authorized in the exercise of sound discretion of the trial court, falls within the purview of "inspection" under Rule 214, and disclosure of the "nature" and "condition" of tangible things under Rule 201(b)(1). To hold otherwise would frustrate the objective of Rule 201 of "full disclosure regarding any matter relevant to the subject matter involved in the pending action \*\*\*."

Our holding necessarily vests broad discretionary powers in the trial court, and "such a breadth of power requires a careful exercise of discretion in order to balance

the needs of truth and excessive burden to the litigants." (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill.2d 180, 193.) In dealing with requests for testing and experimentation, the trial court should avail itself of the provisions of section (c) of Rule 201 which authorize protective orders and the supervision of discovery by the trial court. In framing a discovery order involving the partial destruction of an object, the trial court must be sure that the testing is relevant to the issues in the case and that the information sought is unavailable through any other, less destructive, testing method. Also the trial court must insure that the alteration or partial destruction of the item will not unreasonably impair the opposing litigant's presentation of his case to the trier of fact.

In the case at bar, the hammer will still be available for viewing by the jury after completion of the testing. While a small, pie-shaped wedge will have been removed from the hammer's striking face, the jury will still be able to observe the general condition of most of the striking face, and they will have macrophotos of the hammer's face in its original condition. The drilling of three small holes on the claw portion of the hammer does not involve any unreasonable prejudice to appellee's presentation to the jury.

In this case the trial court, in the exercise of its authority under Rule 201(c), entered an order which adequately protected the rights of the litigants and provided for the supervision of the discovery proceedings. The order allowed defendants' expert to examine the item and to prepare a fairly detailed testing plan for the court's approval. It also required that adequate notice of the time of testing be given to plaintiff's attorney and authorized plaintiff's representative to observe and photograph the testing procedure. Also, one-half of all samples taken is to be given to plaintiff so that additional destruction of the hammer will not be necessary. The nature of the protective order required will, of course, depend upon the facts in

each case. The order entered in this case was appropriate and within the discretion conferred upon the trial court by Rule 201(c).

The appellate court observed that the discovery requested is broader than that specifically provided by our rules. But as this court stated in *Monier,* "the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith *** is the overriding consideration which justifies our conclusions." (35 Ill.2d 351, 361.) To accomplish the purpose of discovery procedures it is necessary that a degree of flexibility be employed in the application of our rules. It would be difficult, if not impossible, to formulate provisions to specifically cover the infinite variety of circumstances in which discovery is indispensable to the expeditious determination of the controversy in accordance with the substantive rights of the parties.

We find no merit to appellee's argument that the testing procedures involved amount to a deprivation of property without due process of law.

Since the issue involved in this case is one of first impression in this State, that part of the order of the circuit court imposing a fine on the attorney for the plaintiff is vacated.

The judgment of the appellate court is reversed. The order of the circuit court of Will County is affirmed in part and vacated in part.

*Appellate court reversed; circuit court affirmed in part and vacated in part.*